UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| CARLENA PAGE CHAMBERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:20-CV-035-PLR-CRW |
| ) | |
| CARTER COUNTY JAIL, JESSIE LEE ) | |
| HODGES, ERIC TRIVETTE, LT. ) | |
| KENT, SAM BECKETT, MATT ) | |
| PATTERSON, CANDICE POTTER, ) | |
| C/O JOHNSON, C/O TURF, C/O ) | |
| EDWARDS, C/O STEWART, and SGT. ) | |
| HENSLY, ) | |
| ) | |
| Defendants. | |

## MEMORANDUM OPINION

In her pro se amended complaint for violation of § 1983, Plaintiff, a former prisoner of the Carter County Jail, alleges that on November 5, 2019, after she was "denied the right to proper chain of command and wrongfully [][written] up," Defendant Hodges stated that he did not care if any inmates had a problem with his officers and that he would take care of those officers, which Plaintiff alleges was abuse and neglect [Doc. 8 p. 3–4].

The next day, on November 6th, Benita Valdez told Plaintiff that she saw the incident underlying Plaintiff's write-up, which Plaintiff told Defendant Hodges, but Defendant Hodges then told Benita Valdez to keep her mouth shut or he would take her job, and told Plaintiff that she would not "beat the write up because [Defendant] Candice Potter," with whom Defendant Hodges was in a relationship, would be in Plaintiff's disciplinary board hearing, all of which Plaintiff alleges was officer bullying, intimidation, and misuse of power [*Id.* at 4].

At her disciplinary board hearing, Plaintiff tried to plead her case to Defendants Potter and Patterson, but they did not call witnesses or give her a fair hearing, and she "was found guilty of fifteen days for something she did not do"[1] [*Id.*]. Plaintiff states that this was cruel and unusual punishment, officer bullying, and dependence and neglect [*Id.*].

Subsequently, on November 8th, Plaintiff informed Defendant Edwards that a crime had been committed against her by a corporal and stated that she needed to speak to the proper chain of command [*Id.* at 5]. Defendants Sgt. Becket and Hodges then came to Plaintiff's cell, at which point Defendant Hodges threatened Plaintiff while she tried to explain to Defendant Sgt. Becket that Defendant Hodges was bullying her and asked Defendant Sgt. Becket to make Defendant Hodges leave [*Id.*]. Defendant Sgt. Becket asked Defendant Hodges to leave four times and stated that she had received a grievance from another inmate about Defendant Hodges bullying Plaintiff, but she did nothing, which Plaintiff asserts was dependence and neglect [*Id.*].

Defendants Edwards and Stewart later came to Plaintiff's cell to do a cell check, at which time Plaintiff "advised them of her rights and asked to speak to the proper chain of command," and Defendant Stewart asked Defendant Edwards if she wanted him to restrain Plaintiff, which Plaintiff asserts was dependence and neglect and cruel and unusual punishment [*Id.*].

Also on the same day, Plaintiff told Defendant Lt. Kent that she needed to speak to him about a crime being committed against her, and he stated he would speak to her later but did not, which she alleges is dependence and neglect [*Id.* at 5–6]. Defendant Stewart also laughed at

---

[1] Nothing in the complaint suggests that this punishment lengthened Plaintiff's sentence or amounted to an "atypical and significant hardship" relative to the ordinary circumstances of prison life. *Sandin v. Conner*, 515 U.S. 472, 484, 486–87 (1995) (finding discipline in segregated confinement does not involve a constitutional liberty interest). Rather, it appears that Plaintiff was sentenced to fifteen days of lockdown and denial of some items, including her mattress and mat [*Id.* at 6 and 8].

Plaintiff when she asked to speak to the Sheriff and said he was going to get him, which Plaintiff states was dependence and neglect [*Id.* at 6].

On November 9th, Plaintiff again advised Defendant Stewart of her situation when he came in her cell, but he grabbed her off the top bunk and slammed her against the wall while Defendant Edwards took her mattress and mat out of her cell, all of which Plaintiff alleges was cruel and unusual punishment, dependence and neglect, and unlawful use of force [*Id.*].

On that same day, Defendant Sgt. Becket came to have Plaintiff sign paperwork and Plaintiff again tried to make this Defendant listen to her and asked this Defendant to let her see the Sheriff because other jail officials would not listen to Plaintiff's allegations that a crime was being committed against her, but Defendant Sgt. Becket stated that if she did so, she would lose her job, which Plaintiff states was dependence and neglect [*Id.*]. However, Defendant Sgt. Becket later told Plaintiff a lieutenant would speak to her on November 12th, and Plaintiff replied that she needed to speak to the Sheriff because she "should not have to wait to press charges against his officer who is committing crimes against inmates" [*Id.*].

Also, on the same day, Defendant Turf made a comment that she had the right to pass out trays and that inmates did not have rights, which Plaintiff alleges was making fun of her and amounts to dependence and neglect and officer intimidation [*Id.* at 7].

On November 10th, Defendant Edwards declined to listen to Plaintiff talk about her situation, which Plaintiff alleges was dependence and neglect and officer intimidation [*Id.*].

Also, on November 11th and 12th, Defendant Hensly refused to talk to Plaintiff about her situation despite Plaintiff's requests, and Defendant Hensly also stated on November 12 that if Plaintiff wanted to talk to the Sheriff, she would have to send a letter, which Plaintiff alleges was dependence and neglect [*Id.* at 7–8].

3

Also on November 12th, Defendant Lt. Kent and others came to Plaintiff's cell and Defendant Lt. Kent stated that he had read Plaintiff's appeal and watched the relevant video footage and did not believe that Plaintiff had done anything wrong, and thus stated that he would take Plaintiff off lockdown and give back her things [*Id.* at 8]. However, he did not allow Plaintiff to address Defendant Hodges as she requested, which she alleges amounts to dependence and neglect and failure to protect [*Id.* at 8].

On November 14th, a second cell check was done on Plaintiff's cell, which Plaintiff alleges was due to Defendant Hodges continuing to intimidate her [*Id.*].

On the same day, Plaintiff wrote to Defendant Patterson about getting a job, but he stated that she could not get a job because she was high at her disciplinary board hearing even though Plaintiff had not been drug tested or misused her privileges, which Plaintiff alleges was cruel and unusual punishment, retaliation, impartial treatment, and unlawful use of power [*Id.*]. However, Defendant Kent later told Plaintiff that this was not personal [*Id.*].

On December 1, 2019, another inmate tried to place herself on protective custody, but she was not allowed to do so, and later it was announced that no inmate could do so, even due to suicidal thoughts, because of overcrowding, which Plaintiff alleges was failure to protect, unlawful use of power, officer intimidation, impartial treatment, and officer bullying [*Id.* at 8–9].

Also, on December 12th, Defendant Hodges knocked over Plaintiff's tote lid and other items during cell inspection and said he did not do so on purpose, but other inmates told Plaintiff that they saw him do it on purpose [*Id.* at 9].

Plaintiff also alleges that Carter County denied her the right to press charges against a corporal for a crime against her and denied her "right to protective custody and suicide" [*Id.*].

4

As relief, Plaintiff seeks an investigation of the Carter County Jail administration, prosecution of Defendant Hodges, and compensation for physical, mental, and emotional distress.

Under the Prison Litigation Reform Act, district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A). The dismissal standard articulated by the Supreme Court in and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

I.     **RETALIATION**

As set forth above, Plaintiff alleges that when she wrote to Defendant Patterson about getting a job, he responded by stating that she could not do so because she was high at her disciplinary board hearing even though she had not been drug tested or misused her privileges, which she asserts was retaliation [Doc. 8 p. 8]. A claim for retaliation in violation of § 1983 requires a plaintiff to demonstrate that (1) she "engaged in protected conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage

5

in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). However, a prisoner's subjective belief that he has been retaliated against is insufficient to state a claim. *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997).

Plaintiff does not specify that her protected conduct motivated Defendant Patterson's denial of her request for a job, and no facts in the complaint allow the Court to plausibly infer any such motivation. Wholly conclusory allegations of retaliation are insufficient to state a plausible claim for violation of § 1983. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987). As such, this allegation of retaliation fails to state a claim upon which relief may be granted under § 1983 and it will be **DISMISSED**.

## II.     EXCESSIVE FORCE

Plaintiff also alleges that when Defendants Stewart and Edwards came to her cell on November 9th, she again tried to talk to Defendant Stewart about her situation for the third time in two days, but he pulled her off her top bunk and slammed her against the wall while Defendant Edwards took her mattress and mat out of her cell [*Id.* at 6].

As it appears that Plaintiff was a pretrial detainee at the time of this incident, this excessive force claim falls under the due process clause of the Fourteenth Amendment. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015). In evaluating such a claim, the relevant inquiry is whether "the force purposely or knowingly used [] was objectively unreasonable." *Id.* at 2473. This determination must be based on the specific facts of the case, viewed from the "perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* The court must also take into account "the 'legitimate interests that stem

from [the government's] need to manage the facility in which the individual is detained'" and appropriately defer to "'policies and practices that in th[e] judgment' of jail officials that 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)). The court should consider the following non-exclusive list of considerations that "may bear on the reasonableness or unreasonableness of the force used" against pretrial detainees:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* However, "the use of excessive force that amounts to punishment" against pretrial detainees is unconstitutional. *Id.* (quoting *Graham*, 490 U.S. at 395 n.10).

First, it appears from the amended complaint that this incident occurred when Defendants Edwards and Stewart came to Plaintiff's cell to take her mattress and mat as part of the discipline against her for her write up. Moreover, Plaintiff does not allege that she cooperated with these Defendants before Defendant Stewart pulled her off the bed and slammed her against the wall, but rather states that she first sought to again present her side of the story of that write up at that time. Also, Plaintiff does not allege that this act caused her any injury[2] or set forth any other facts from which the Court could plausibly infer that Defendant Stewart acted with an amount of force that was objectively unreasonable. Thus, Plaintiff has failed to "nudge[] the[] claim[] across the line from conceivable to plausible," and it therefore fails to state a claim upon which relief may be granted under § 1983. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Scheid*

---

[2] The Court's order allowing Plaintiff to file an amended complaint stated she should specify any injury incurred as a result of any constitutional violations therein [Doc. 7 p. 2].

*v. Fanny Farmer Candy*, 859 F.2d 434, 437 (6th Cir. 1988) (holding that a complaint must plead facts in support of material elements of claim).

### III.     PROSECUTION

As set forth above, Plaintiff also seeks prosecution of Defendant Hodges and an investigation of the Carter County Jail administration [*Id.* at 11]. However, Plaintiff "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Thus, these claims are not cognizable under § 1983.

### IV.     EMOTIONAL AND MENTAL DISTRESS

Plaintiff's remaining claims are for monetary compensation for the emotional and mental distress she incurred during the incidents in her complaint that occurred while she was incarcerated in the Carter County Jail. However, despite the Court's previous order providing that Plaintiff's amended complaint should specify any injury she incurred as a result of the constitutional violations alleged therein [Doc. 7 p. 2], Plaintiff has not alleged that she suffered any physical injury due to these incidents, and she cannot bring such claims without having incurred a physical injury. 42 U.S.C. § 1997e(e) (providing that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury"); *Wilson v. Yaklich*, 148 F.3d 598, 600–01 (6th Cir. 1998) (providing that claims seeking monetary damages for failure to protect in violation of the Eighth Amendment fail absent a physical injury that is more than *de minimis*).

Thus, all remaining claims will be **DISMISSED** for failure to state a claim upon which relief may be granted under § 1983.

## V. CONCLUSION

For the reasons set forth above, even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983. Accordingly, this action will be **DISMISSED**. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

E N T E R:

/s/ Pamela L. Reeves
**CHIEF UNITED STATES DISTRICT JUDGE**